Rachael D. Lamkin (246066)
Lamkin IP Defense
100 Pine St. Suite 1250
San Francisco, CA 94111
916.747.6091
RDL@LamkinIPDefense.com

*Attorneys for Plaintiff W. Interactive, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| W. Interactive, Inc.<br>*Plaintiff*<br><br>v.<br><br>Shipping & Transit, LLC<br><br>*Defendant* | Case No.<br><br>**Complaint For Declaratory Judgement of Non-Infringement & Invalidity, Patent Misuse and Unfair Competition** |

**Plaintiff's Complaint Seeking A Declaratory Judgement**
**As To Non-Infringement & Invalidity,**
**Patent Misuse, and Unfair Competition**

Plaintiff W. Interactive, Inc. ("Interactive") respectfully files this Complaint seeking a declaratory judgment of non-infringement and invalidity as to United States Patent Nos. 6,415,207, 6,904,359, and 6,317,060 (collectively, the "Patents-In-Suit"), and asserts claims for Patent Misuse and Unfair Competition.

## NATURE OF THE ACTION

1. This is an action for a declaratory judgment of non-infringement arising under the patent laws of the United States, Title 35 of the United States Code, and for claims of Patent Misuse and Unfair Competition arising under federal and California state law, respectively.

2. Interactive requests this declaratory judgment and other relief because: (1) Shipping & Transit, LLC ("S&T") is asserting its patents in bad faith; (2) has sent Plaintiff a cease and desist letter ("C&D") demanding past usage and back damages, even though no reasonable pre-suit investigation could have resulted in infringement allegations against a product that employs no notifications; (3) the Patents-In-Suit are clearly invalid under § 101; and (4) S&T has engaged in patent misuse and unfair competition.

**THE PARTIES**

3. Declaratory Judgment Plaintiff Interactive is a New York Corporation with a substantial presence in California, including customers in this District.

4. S&T, formerly known as ArrivalStar S.A. and Melvino Technologies Limited, is an entity that has filed over six-hundred patent infringement lawsuits and sent unknowable numbers of cease and desist letters seeking infringement rents. Once a Non-Practicing Entity, S&T now purports to be a product company, describing itself as "a two-year-old research and development company." (Exhibit D, p.1.)

5. By its own admission, S&T has signed over 800 settlement agreements. (*Id*. at 2.)

**JURISDICTION AND VENUE**

6. This Complaint arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq. based on Defendant's threats to sue Plaintiff for patent infringement, thereby giving rise to an actual case or controversy under 28 U.S.C. §§ 2201 and 2202.

7. This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1338 and 1367, and 35 U.S.C. § 271. Should S&T attempt to avoid adjudicating the merits of Interactive's declaratory judgment claims by filing a covenant not to sue, this Court maintains jurisdiction over Interactive's federal Patent Misuse claim and thus supplemental jurisdiction over

Interactive's state law claim Unfair Completion claim and request for attorney's fees under California's Private Attorney General Statute, Cal. Code Civ. Proc., § 1021.5.

8. This Court has personal jurisdiction over S&T. S&T conducts substantial business in this judicial district, including regularly soliciting licensing revenues and engaging in other persistent courses of conduct and deriving substantial revenue from individuals and entities in California.

9. S&T has previously admitted that jurisdiction was proper over S&T in this District. *See, e.g. FTL Apparel v. S&T*, Case No. 3:16-cv-01453, Dkt. No. 15, para.5.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) & (c) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district and because S&T is subject to the Court's personal jurisdiction with respect to, at a minimum, Plaintiff's claim for unclean hands.

11. S&T has previously admitted that venue is proper in this District. (*Id*. at para.14.)

**FACTUAL BACKGROUND**

12. *In Shipping and Transit LLC v. Hall Enterprises, Inc.* (Case No. 16-06535-AG-AFM, CDCA), S&T asserted two of the four patents asserted against Interactive herein (the '207 and the '359).

13. On January 9, 2017, the court in *S&T v. Hall* opined, in a tentative ruling, that:

- "all of the asserted claims of the Patents-in-Suit ***are drawn to patent-ineligible abstract ideas***[.]" (Exhibit B, p.10);
- Each claim of the three asserted patents ***failed to contain an inventive step***. (*Id.* at 11-12);
- "Plaintiff's § 101 position was objectively unreasonable in light of the Supreme

Court's *Alice* decision and the cases that applied that decision to ***invalidate comparable claims***." (*Id*. at 12) (emphasis added);

- "The weakness of Plaintiff's § 101 position is a significant factor that weighs in favor of a finding that this case is "exceptional" under 35 U.S.C. § 285." (*Id*. at 12);
- "***Plaintiff has repeatedly dismissed its own lawsuits to evade a ruling on the merits and yet persists in filing new lawsuits advancing the same claims***." (*Id*. at 13);
- "Plaintiff's litigation history reflects an aggressive strategy that avoids testing its case on the merits and instead aims for early settlements falling at or below the cost of defense. (*Id*. at 13-14);
- "Looking at the conduct of Plaintiff, [] the Court finds a clear pattern of serial filings with the goal of obtaining quick settlements at a price lower than the cost of litigation and the intent to litigate ***even when Plaintiff should have realized it had a weak litigation position***." (*Id*. at 14) (emphasis added);
- "These tactics present a compelling need for deterrence and to discourage ***exploitative litigation*** by patentees who have no intention of testing the merits of their claims. Based on the totality of the circumstances, the Court finds that this is an "exceptional" case." (*Id*. at 14) (emphasis added).

(Exhibit E, attached hereto.)

14. It's important to note that the above opinions are set forth in a tentative, not a

final, order. Nonetheless, these opinions stand until the *Hall* court issues its final ruling.[1]

15. Even after the *Hall* court's tentative issued, S&T sent a C&D to Interactive. S&T has continued to assert its patents even though their assertion is objectively and subjectively baseless.

16. Even before the *Hall* tentative order, S&T has repeatedly been provided strong Section 102 and 103 prior art and yet S&T continues to assert its patents, willfully ignoring said prior art. (*See, e.g.,* Exhibit I ¶¶64-67, 172-180.)

17. The C&D sent to Interactive by S&T is riddled with typos. And that is the best thing one can say about the C&D. Most egregiously, the claim charts therein are cut and pasted from C&D's sent to other companies; companies with completely different products.

18. For example, if you compare the alleged infringement column for the '207 patent in the Interactive C&D to the one sent to a company called OEC Logistics, you see the language is identical. (*Compare* Exhibits D pps. 11-13 *with* Exh. F pp. 7-9.) They are identical infringement charts for two completely different products.[2]

19. And the identical infringement chart for the '207 patent in the OEC and Interactive C&Ds appears to be merely the last sham C&Ds sent in a long line of sham C&D letters. An internet search for other S&T C&D's reveals that S&T has been asserting the identical '207 infringement chart against a variety of different companies for years. *See* https://trollingeffects.org/demand/shipping-and-transit-llc; *see also* Exhibit G.

20. S&T has sent its identical C&D to company after company, many of them with completely different products, technologies, and business models.

[1] The *Hall* court did not expressly state that the patents at-issue were invalid; invalidity was not before the Court in the motion at issue, which was a Section 285 fees motion.
[2] The undersigned is counsel for both Interactive and OEC. Both companies have filed declaratory judgment complaints in this District. *See* Case No. 3:17-cv-03244.

21. In a mind boggling lack of concern for ethics, professional responsibility, or even the risk of sanction, an analysis of each infringement chart shows that no new work was done in asserting the Patents-In-Suit against new companies.

22. For example, each of the infringement charts for the ’207 patent contain a typo. In the accused product column (the right column) in the ’207 charts, instead of employing language that describes the accused product, S&T accidently pasted in language from Column 6, lines 1-10 of the ’207 patent. (*Compare* Exh A, Col. 6:1-10 *with* Exh. D p.13 (highlighted), *and* Exh. E p. 9 (highlighted)). That is, the language describing the accused product is simply language cut and pasted from the asserted patent. And that error is repeated in each successive C&D letter to each different company. (*See id.; see also* Exh H p.8).

23. The identical claim charts sent to a wide variety of different companies makes it highly likely that no pre-suit analysis is being done. The repeated cut and paste error from C&D to C&D should be confirmation that the attorneys sending these C&D letters are not engaged in the requisite standard of care. They are certainly not conducting a pre-suit analysis specific to each company that receives an enforcement letter.

24. Possibly most egregiously in this case is that the C&D sent to Interactive wasn’t sent by the law firm that has historically represented S&T, James Dollard of Leslie Robert Evans & Associates. The C&D sent to Interactive comes from a new attorney, Frank Marciano. But the C&D contains the identical ’207 claim chart formerly used by James Dollard. (*Compare* Exh. D *with* Exhs. D, E, H.)

25. Thus, it is highly unlikely that S&T’s new lawyer conducted any type of pre-enforcement infringement analysis before sending the C&D to Interactive. The new lawyer simply cribbed the letter of the former lawyer, with or without his permission.

26. As has occurred in this case, S&T has a patent and practice of asserting its patents against companies that any reasonable investigation would exclude from potential infringement allegations. (*See* Exhs. E, I, ¶¶66-122.)

27. In multiple prior cases involving the Patents-In-Suit, S&T voluntarily dismissed its claims to avoid a ruling on the merits regarding invalidity under 35 U.S.C. § 101. *See, e.g.*, *Shipping and Transit, LLC v. Hall Enterprises, Inc.*, No. 2:16-cv-06535 (C.D. Cal.), Dkt. 15; *Shipping and Transit, LLC v. Lensdiscounters.com*, No. 9:16-cv-80980 (S.D. Fla.), Dkt. 30; *Shipping and Transit, LLC v. 1A Auto, Inc.*, No. 9:16-cv-81039 (S.D. Fla.), Dkt. 19.

28. S&T's positions and conduct in prior cases is the subject of multiple pending motions for attorney fees under 35 U.S.C. § 285. *See, e.g.*, *Shipping and Transit, LLC v. Hall Enterprises, Inc.*, No. 2:16-cv-06535 (C.D. Cal.), Dkt. 21; *Shipping and Transit, LLC v. Lensdiscounters.com*, No. 9:16-cv-80980 (S.D. Fla.), Dkt. 39; *Shipping and Transit, LLC v. 1A Auto, Inc.*, No. 9:16-cv-81039 (S.D. Fla.), Dkt. 25.

29. The above notwithstanding, S&T continues to press its invalid patents.

**COUNT ONE: INVALIDITY**

30. The Patents-In-Suit are invalid under § 101 for, at least, the reasons cited in prior district court briefing. *See, e.g.*, *Shipping and Transit, LLC v. Hall Enterprises, Inc.*, No. 2:16-cv-06535 (C.D. Cal.), Dkt. 13, 21, 24.

**COUNT TWO: INVALIDITY**

31. The asserted claims of the Patents-In-Suit are invalid for failure to comply with one or more of the sections of the Patent Code governing validity, namely, 35 U.S.C. §§ 101, 102, 103, and 112.

**COUNT THREE: NON-INFRINGEMENT**

32. The Accused Product does not infringe the Patents-In-Suit for multiple reasons including:

a. said product does not employ or provide any in-process notifications; it's simply not a shipping notification product.[3]

b. The accused product doesn't employ email notifications;

c. The accused product does not monitor the location of vehicles;

d. The accused product does no status monitoring.

33. Each of those facts would have been easily discovered in any type of pre-suit investigation.

34. S&T knew, or willfully ignored, that its infringement allegations were baseless.

**COUNT FOUR: PATENT MISUSE**

35. S&T has demonstrably acted with bad faith and improper purpose in continuing to assert the Patents-In-Suit even though it is subjectively and objectively unreasonable to believe said patents are valid and/or infringed. *See* ¶¶12-34, *supra*.

36. S&T's patent assertion is part of a repeated pattern of filing frivolous, cookie-cutter lawsuits and immediately seeking settlement well below the cost of litigation.

37. S&T has sought to seek infringement rents on a product that fails to provide critical limitations in each asserted claim thereby impermissibly broadening its patent grant.

38. Further, S&T has done so with anticompetitive effect. In its C&D, S&T discusses its own notification product and its development history at length. There is no reason to discuss a competitive product in a C&D alleging infringement unless one is trying to force competitors

[3] As the screenshots of Interactive's website contained in S&T's C&D makes clear: the accused product provides access to shipping data, it does not provide access to the location of the shippers, nor does it provide notifications of same. (Exh. A, pps. 5-6.)

to adopt S&T's product instead of their own.[4]

39. Further, S&T admits that it has forced 800 companies in the shipping notification industry to take a license to its patents, and admits "Most of [Interactive's] peers and competition in the ecommerce sector have officially paid for '207 license."

40. In an interview with the Wall Street Journal, the inventor and co-owner of S&T explained, "The company is going after smaller targets because 'there is no large retailer that is not a licensee[.]'"

41. These actions constitute an impermissible tax on the entire shipping notification industry, to anticompetitive effect.

42. Further, S&T has been initiating sham infringement enforcement in bad faith, irrespective of the validity of its patents or the likelihood of success on the merits, with the intent of using threat of the judicial process, as opposed to the outcome of that process, as an anticompetitive weapon to increase its licensing power in the relevant market.

43. For the reason's set forth above and attached, S&T's C&D constitutes sham enforcement sent in bad faith; *i.e.,* the invalidity and infringement statements in its C&D are so baseless that no reasonable litigant could realistically expect to secure favorable relief.

44. By forcing what may be the entire or near entire shipping notification industry to take licenses to its patents S&T has thereby monopolized the market for shipping notification technology throughout the industry in the United States, to anticompetitive effect.

**COUNT FIVE: UNFAIR COMPETITION**

45. The above-described acts and omissions constitute Unfair Competition under

---

[4] The only other plausible explanation is that S&T has released a product merely to avoid being labeled an "NPE" but we won't know their actual motivation until discovery permits said understanding.

Section 17200 et. seq. of the California Business & Professions Code.

46. S&T's conduct constitutes unlawful, unfair, and fraudulent business acts, including the assertion of objectively and subjectively meritless infringement allegations in a way that violates the competitive spirit of the marketplace and promulgates misleading information. *See* ¶¶12-28, *supra*.

47. As to the "unfair" prong of 17200, Interactive incorporates by reference the discussion of S&T's anticompetitive conduct, *supra*.

48. S&T's C&D contains multiple fraudulent statements pertaining to validity and infringement, including:

a. "[S&T] engages extensive research into reviewing publically available materials and information about [Interactive] products and services. Two or more people determined alleged patent usage before sending you this document."

b. "Our proposal for is a similar agreement that the majority of the top ecommerce logistics already have."

c. "Most of [Interactive] peers and competition in the ecommerce sector have officially paid for '207 license."

d. "We have taken the time to break down how each part of the patent claims is/was used and how the patent claims covered [Interactive] technologies and services."

e. "***After careful review,*** Shipping has determined that ACTIVETRAC programs, products, services, systems and methods, including, but not limited to, its shipment "Shipment Tracking & Alerts" include tracking and messaging technologies that are protected within United States '207, '060 and '359 Patents owned by Shipping, LLC."

f. "Those programs and services described above and likely much other functionality used by [Interactive's] 's products and services are covered by claims of these aforementioned patents."

g. "Please understand Shipping processes for determining infringement is an extensive and historically speaking an extremely accurate process."

h. "These patents are strong in both invalidity and scope."

49. In reliance on these fraudulent statements, Interactive spent many hours, at disruption to its business, analyzing the asserted patents and its product.

50. Interactive was also forced to evaluate any risk to its customers and clients, many of whom are in California, again at great business disruption.

51. Finally, Interactive was forced to hire an attorney to defend itself in this meritless enforcement action.

52. For the reason's set forth above and attached, S&T's C&D constitutes sham enforcement sent in bad faith; *i.e.,* the invalidity and infringement statements in its C&D are so baseless that no reasonable litigant could realistically expect to secure favorable relief.

53. Interactive has been harmed by S&T's unfair practices and seeks financial and equitable relief from this Court.

54. As part of its remedy, Interactive requests attorney's fees under California's Private Attorney General Statute, Cal. Code Civ. Proc., § 1021.5.

**PRAYER FOR RELIEF**

Interactive respectfully requests of this Court the following relief:

1. A determination that the Patents-In-Suit are invalid;
2. A determination that the Accused Product does not infringe the Patents-In-Suit;

3. A finding of Patent Misuse;
4. A finding of Unfair Competition;
5. Attorney's fees pursuant to Cal. Code Civ. Proc., § 1021.5;
6. Attorney's fees and costs under Section 285 and this Court's inherent authority; and
7. Any other relief this Court believes is just and proper.

Rachael D. Lamkin

Rachael D. Lamkin

*Counsel for Plaintiff W. Interactive, Inc.*